http://www.va.gov/vetapp16/Files3/1621756.txt

Citation Nr: 1621756 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 12-15 296 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia

THE ISSUES

1. Entitlement to service connection for a left knee disability.

2. Entitlement to service connection for a low back disability, to include as secondary to a left knee disability.

REPRESENTATION

Veteran represented by: Georgia Department of Veterans Services

ATTORNEY FOR THE BOARD

C. Boyd Iwanowski, Associate Counsel

INTRODUCTION

The Veteran served on active duty from June 1981 to June 1984 and from November 1990 to April 1991, with additional service in the National Guard. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). In his substantive appeal, the Veteran requested a videoconference hearing, but in a March 2015 correspondence, he cancelled this request.

In January 2015, the Board remanded these issues for further evidentiary development. The requested development was completed, and the case has now been returned to the Board for further appellate action.

FINDINGS OF FACT

1. A chronic left knee disability was not incurred in service and did not manifest within one year of separation from service.

2. A chronic low back disability was not incurred in service and did not manifest within one year of separation from service.

CONCLUSIONS OF LAW

1. The criteria for establishing service connection for a left knee disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1113, 1131, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

2. The criteria for establishing service connection for a low back disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1113, 1131, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

VA must notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Compliant notice was provided in November 2008.

VA's duty to assist includes obtaining available treatment records and, where appropriate, providing the Veteran with VA examinations. While some of the Veteran's service treatment records (STRs) are associated with the record, it was determined that the Veteran's complete STRs are unavailable. Specifically, those records pertaining to the period between November 1990 and April 1991. The Veteran was informed of the unavailability of these records in a January 2010 letter. As there are missing records, VA has a heightened duty to assist him in developing evidence to substantiate his claims. O'Hare v. Derwinski, 1 Vet. App. 365 (1991). Notably, the Veteran has made no contentions that he sought knee or back treatment during that time period. In addition, the record contains post-service VA and private treatment records and the Veteran was provided a VA knee examination in August 2015. The Board recognizes that the Veteran has not been afforded a VA examination of his back. Case precedent explains that an examination is required when (1) there is evidence of a current disability, (2) evidence establishing an 'in-service event, injury or disease,' or a disease manifested in accordance with presumptive service connection regulations occurred which would support incurrence or aggravation, (3) an indication that the current disability may be related to the in-service event, and (4) insufficient evidence to decide the case. McLendon v. Nicholson, 20 Vet. App. 79 (2006). Here, the evidence does not establish an in-service injury and, as explained below, the Board finds there is enough evidence to decide the case based on the Veteran's argument that his back condition is secondary to the disability in his left knee and not directly related to his active duty service.

The claim was remanded by the Board in January 2015 for VA examination of the knee and any further development of the back claim found to be necessary following the knee examination. In August 2015, the Veteran underwent a VA examination and in November 2015, he was provided with a supplemental statement of the case addressing both issues on appeal. The Board finds that the Agency of Original Jurisdiction substantially complied with the remand directives and therefore, an additional remand is not required pursuant to the holding in Stegall v. West, 11 Vet. App. 268 (1998).

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015).

Under section 3.310 of VA regulations, service connection may also be established on a secondary basis for a disability which is proximately due to, or aggravated by, service-connected disease or injury. 38 C.F.R. § 3.310. Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In November 2008, the Veteran filed a claim for entitlement to service connection for a left knee injury and a low back injury secondary to the knee injury. He indicated on his application for benefits that the disability began about June 1989 which would have been a period during which he was not serving on active duty. In his notice of disagreement, received in August 2010, the Veteran indicated his belief that his current left knee condition was, in fact, present in March 1984, given that he noted on a Report of Medical History that he had trick or locked knees at that time. 

The Veteran's March 1984 separation examination indicated normal lower extremities and spine. On the accompanying Report of Medical History, the Veteran checked "yes" for trick or locked knee and denied recurrent back pain. On a February 1988 periodic physical Report of Medical History, the Veteran checked "no" for trick or locked knee, "no" for other joint/lower extremity symptoms, and "no" for recurrent back pain. On a February 1988 separation examination, the lower extremities and spine were marked as normal.

Private post-service treatment records indicate the Veteran was diagnosed with a herniated lumbar disc in February 2006 and with a tear of the patellar tendon in April 2007 which required surgery.

In August 2009, a private doctor, Dr. M., provided a statement in support of the Veteran's claim. He indicated he had been the Veteran's chiropractor for almost a month for low back and knee problems. He related the Veteran had over 12 years of service in the Army and Army National Guard. The chiropractor indicated the presence of severe degenerative joint disease (DJD) in the Veteran's back and knew he had knee surgery in April 2007. Dr. M. stated that he felt "[v]ery strongly that given [the Veteran's] bilateral knee problems from active duty, his recent operation and his lower back degeneration, that it is more likely than not these are directly due to his service conditions." Dr. M. indicated that the swelling, pain and locking knee over time would "cause a severe problem with his back due to an abnormal gait and a favoring of his left knee over the right." Dr. M. opined that the Veteran's back problem "most likely occurred during his active duty time between 1981 and 1984 and has been exacerbated by this knee problem." He concluded by stating that the Veteran's discharge physical "show[ed] [him] that these problems were present on active duty."

On an April 2011 x-ray, mild degenerative disc disease was identified at L5-S1 of the spine. It was noted there was a question of minimal or grade 1 spondylolisthesis L5 on S1. There was no evidence of the presence of DJD or arthritis. An April 2011 X-ray of the knee showed mild pretibial soft tissue swelling on the left associated with fragmentation of the apophysis. 

In April 2015, the Board considered the claims and determined a VA examination to obtain a medical opinion was warranted in regard to service connection for the left knee. The Board found that the claim for service connection for the low back was inextricably intertwined with the left knee claim given the Veteran's contention that his back condition was secondary to his left knee disability and Dr. M.'s August 2009 opinion on the matter.

In August 2015, the Veteran underwent a VA examination. Tear of the patellar tendon, status post repair of patellar tendon and open reduction and internal fixation was listed as the diagnosis with a diagnosis date in 2007. The Veteran indicated he had problems with both knees after service from doing physical training and running in jump boots. He indicated his knees would swell and click. He stated he did not seek treatment because he did not want to complain. He indicated that at his separation examination, he told the examiner he always had trouble with swelling and aching in his knees. He indicated that he was still young following separation from service in 1984 and did not seek treatment at a VA clinic until 2008 or 2009. He continued to take pain medications to help with his knee pain. He indicated that while at the YMCA, his knee locked up and hyperextended and they had to reconstruct his knee through surgery. Regarding employment, the Veteran indicated he was a retired state trooper, medically retired due to back and knees. He indicated he got hurt on the job and was not capable after reconstruction of the knee to do prolonged standing and running. His knee would give way and he could not continue to do his job well due to the pain.

Based on a review of the record, the examiner opined that the Veteran's left knee patellar tear status post reconstruction was not due to or related to his service, to include the report of trick/locked knee in 1984. The examiner explained his conclusion was based on the normal examination report in February 1988 when the Veteran did not indicate he had a trick or locked knee. The examiner concluded based on this that whatever issue the Veteran had in 1984 had resolved and the examiner found no evidence of record regarding problems with the left knee until 2007 - a span of 23 years.

Upon review of the conflicting medical opinions of record, the Board finds that the VA examination opinion that was based on a review of the claims file and a direct examination of the Veteran's knee is more probative than the opinion offered by Dr. M. who did not indicate review of the claims file and was his chiropractor. Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail and whether there was review of the Veteran's claims file. Prejean v. West, 13 Vet. App. 444 (2000). In addition, an opinion based upon an inaccurate factual premise has no probative value. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Swann v. Brown, 5 Vet. App. 229 (1993)) (holding that the Board is not bound to accept medical opinions that are based upon an inaccurate factual premise); see also Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (the Board has authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence). Here, there are several inaccuracies in Dr. M.'s opinion. He stated that the Veteran had severe degenerative joint disease (a.k.a. arthritis) in his back in August 2009. However, on x-rays taken in April 2011, mild degenerative disc disease was demonstrated. In addition, Dr. M. did not note the lack of treatment for or indication of back pain or any back concerns between 1981 and 1984 or that the examinations in 1984 and 1988 did not indicate any abnormality of the knees, lower extremities or spine. 

Overall, the preponderance of the evidence fails to demonstrate that the notation of "trick" or "locked" knee in March 1984 relates to a currently diagnosed disability of the knee. In addition, the record does not support a finding that the Veteran's back disability is directly related to active duty service or secondary to a condition that can properly be considered service connected. The record does not contain x-ray evidence of a chronic disability of either of the knee or the back and initial treatment for knee and back concerns appears in the record over 20 years after the single notation of a knee issue in service. The long period of time that passed between the Veteran's period of active service and the patellar tear of the left knee weighs heavily against a relationship between the two. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (holding that a proper consideration for the trier of fact is the amount of time that has elapsed since military service). In addition, it does not appear that the symptomatology continued unabated after 1984 as the 1988 Report of Medical History does not note continuing problems with a "trick" or locked knee. 

The Board acknowledges the Veteran's sincere belief that his knee condition had onset in service and his back condition is secondary thereto. The Veteran is competent to report on matters observed or within his personal knowledge, and is therefore competent to make statements regarding symptoms related to the knee or back. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, a probative medical opinion on the etiology or underlying causes of a knee condition requires the specialized training of a medical professional. In this case, as a layperson not shown to possess appropriate medical training and expertise, the Veteran is not competent to render a persuasive or competent medical opinion on whether his left knee disability or low back disability were caused by or are otherwise related to his military service. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir 2006). Hence, his assertions in this regard cannot constitute competent and persuasive evidence in support of the claims for service connection. The Board finds any current assertion of low back pain beginning during active service and continuing since that time to be lacking credibility in light of the Veteran's denial of recurrent back pain on reports of medical history in 1984 and 1988 and the Veteran listing the onset date of the low back disability as June 1989 in his November 2008 claim. 

Overall, the preponderance of the evidence is against a finding that the Veteran's left knee patellar tear status post reconstruction or the DDD or possible spondylolisthesis were incurred in or are related to service, or that arthritis manifest in the left knee or low back within one year of separation from active duty; therefore, the claims for service connection must be denied. As service connection is not in effect for a left knee disability, any claim for service connection secondary to a left knee disability must fail. 38 C.F.R. § 3.310. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claims, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. at 55-56.

ORDER

Service connection for a left knee disability is denied.

Service connection for a low back disability is denied.

____________________________________________
Nathan Kroes
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs